**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| Blue Spike LLC, | ) |
| | ) |
| Plaintiff, | ) **CIVIL ACTION NO. 2:16-cv-00703** |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| Verance Corp., et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANT INTEL CORPORATION'S MOTION TO DISMISS OR TRANSFER

Intel Corporation ("Intel") moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the claims of patent infringement brought against it by Blue Spike LLC ("Blue Spike"), or in the alternative, to transfer this action to the Northern District of California.  Intel's motion is based on substantially identical grounds as a similar motion filed contemporaneously herewith by its co-defendant in this action, Verance Corporation ("Verance").  *See* Verance's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) or to Transfer Venue filed on October 31, 2016 (D.I. 42) ("Verance's Motion to Dismiss"). To streamline the briefing presented to the Court on identical issues, Intel joins in Verance's motion, and provides the following brief supplement in support of Verance's brief.

## I.    INTRODUCTION

Blue Spike should never have filed its complaint against Intel in this case.  Indeed, Blue Spike explicitly gave up the right to do so in exchange for valuable consideration.  Specifically, in April 2004, Blue Spike's predecessor-in-interest filed a similar suit in the Southern District of Florida alleging that technology made by Verance Corporation ("Verance") infringed certain of its patents.  In October 2005, the parties dismissed the case without prejudice pursuant to a settlement agreement ("Settlement Agreement").   As part of that agreement, the parties put in place a set of procedures to deal with any future disputes relating to Verance Corporation's digital watermarking technology—which is the very same technology licensed by Intel from Verance that Blue Spike alleges is infringing here.[1]  In particular, pursuant to the Settlement Agreement, Blue Spike agreed to (1) mediate any "disputes as to infringement or invalidity of United States Patent Nos. 5,889,868 . . . or relating to Verance Corporation's digital watermarking technology" ***before*** filing a lawsuit; and (2) file any subsequent lawsuit relating to

---

[1]    *See* D.I. 1 ¶ 17 (identifying "[Defendant's] digital watermarking technology, including its Cinavia and ConfirMedia products and services" as the sole Accused Products).

those disputes "***only*** in the United States District Court for the Northern District of California."
*See* D.I. 42, Ex. B, Settlement Agreement ¶¶ 2, 3(a) (emphasis added).  Neither of those
conditions was met here.  Blue Spike filed this suit asserting infringement by Intel solely based
on Intel's use of the same Verance digital watermarking technology covered by the Settlement
Agreement, and asserted infringement of U.S. Patent No. 5,889,868 against Intel, a patent
explicitly covered by the Settlement Agreement.  Yet despite the unambiguous terms of the
Settlement Agreement, Blue Spike (1) never mediated before filing suit and (2) filed suit in the
Eastern District of Texas instead of the Northern District of California.  Blue Spike's present
action, therefore, is an unequivocal violation of the Settlement Agreement.  As discussed below,
Intel is an intended third-party beneficiary of that agreement, and is entitled to enforce the rights
that Blue Spike agreed to provide in 2005.

Intel thus respectfully requests that Blue Spike's Complaint be dismissed or, in the
alternative, that the present case be transferred to the Northern District of California consistent
with the prior Settlement Agreement.

## II.     THE CASE SHOULD BE DISMISSED

### A.     Blue Spike Failed to Comply with the Terms of the Settlement Agreement

As explained in Verance's Motion to Dismiss (which is incorporated herein and adopted
by Intel), Blue Spike failed to comply with the terms of the Settlement Agreement in multiple
ways.  First, it failed to mediate the dispute before filing suit.  D.I. 42, Ex. B, Settlement
Agreement § 2; *see also* D.I. 42, Verance's Motion to Dismiss at 13.  Second, it filed suit in the
Eastern District of Texas despite the fact that the Settlement Agreement unambiguously requires
any future suit be filed in the Northern District of California.  D.I. 42, Ex. B, Settlement
Agreement § 3(a); *see also* D.I. 42, Verance's Motion to Dismiss at 13.  Blue Spike's failure to
meet the conditions precedent specified in the Settlement Agreement necessitates dismissal.  *See,*

*e.g.*, *Honeywell Int'l, Inc. v. Clark Const. Grp., Inc.*, No. 06-cv-0125, 2006 WL 2932217 (W.D. Tex. Oct. 11, 2006); *Vanguard Underwriters Ins. Co. v. Smith*, 999 S.W.2d 448, 451 (Tex. App. 1999); *Boler-Phillips Body Shop, Inc. v. Employers Mut. Cas. Co.*, 251 F. App'x 912, 915 (5th Cir. 2007); *see also* D.I. 42, Verance's Motion to Dismiss at 13-19.

## B.     Intel Is a Third-Party Beneficiary of the Settlement Agreement

### 1.     California Law Governs Interpretation of the Settlement Agreement

Intel is entitled to enforce the Settlement Agreement as a third-party beneficiary of the agreement.  Contract interpretation is governed by state law.  *See Ciena Corp. v Nortel Networks Inc.*, No. 2:05-cv-14, 2005 WL 1189881, at *3 (E.D. Tex. May 19, 2005) (citing *Tex. Instruments, Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1329 (Fed. Cir. 2000)).  The Settlement Agreement does not have a choice-of-law clause.  *See* D.I. 42, Ex. B, Settlement Agreement. As such, the law of the state that "has the most significant relationship to the transaction and the parties" shall be applied.  Restatement (Second) of Conflict of Laws § 188 (1971); *see also Maxus Expl. Co. v. Moran Bros.*, 817 S.W.2d 50, 53 (Tex. 1991) (applying the Restatement (Second) of Conflict of Laws to determine choice of law).  Here, the primary focus of the three-page Settlement Agreement is the procedure for resolving any future disputes regarding the Verance digital watermarking technology, and the Settlement Agreement specifies that California is the agreed-to forum for those disputes.  D.I. 42, Ex. B, Settlement Agreement, § 3(a).  Moreover, the only issues in this dispute are those covered by the Settlement Agreement, *i.e.*, Blue Spike's allegations directed to Intel's use of Verance's digital watermarking technology.[2]  Because the "place of performance" and "subject matter of the contract" both relate

---

[2]     Although a plaintiff's choice of forum is sometimes given credit in a choice-of-law analysis, Blue Spike only asserts federal-law claims in its complaint and thus has not chosen to proceed under any particular state's law.  *Sheldon v. Pinto Tech. Ventures, L.P.*, 477 S.W.3d 411, 418-19 (Tex. App. 2015).

to California (Restatement (Second) of Conflict of Laws § 188), California is the state with the most significant relationship to the agreement and California law should apply.  *See Weber v. PACT XPP Techs. AG*, 811 F.3d 758, 763 (5th Cir. 2016) (under Texas choice-of-law rules, determining that German law applied to interpret a contract with a forum-selection clause mandating litigation in Germany).  In any case, as discussed further below, Intel's status as a third-party beneficiary under the Settlement Agreement does not change whether California, Texas, or Florida law is applied.

## 2.   The Parties Expressly Intended to Benefit Verance's Licensees as a Class

A "contract, made expressly for the benefit of a third party, may be enforced by him at any time before the parties thereto rescind it." Cal. Civ. Code § 1559 (West); *Stocco v. Gemological Inst. of Am., Inc.*, 975 F. Supp. 2d 1170, 1179 (S.D. Cal. 2013).[3]  Courts have interpreted this requirement that a contract be made "expressly for the benefit of a third person" "to mean merely the negative of 'incidentally.'"  *See Gilbert Fin. Corp. v. Steelform Contracting Co.*, 145 Cal. Rptr. 448, 450 (Ct. App. 1978).  The test for determining whether a

---

[3]   Florida, where the previous litigation was pending, and Texas, where the present complaint is pending, deal with questions of third-party beneficiary status similarly. In Florida, a third party must show "the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party." *Found. Health v. Westside EKG Associates*, 944 So.2d 188, 194-95 (Fla. 2006). The third party "need not be mentioned by name as long as the contract refers to a 'well defined class of readily identifiable persons' that it intends to benefit." *Polo Ralph Lauren, L.P. v. Tropical Shipping & Const. Co., Ltd.*, 215 F.3d 1217, 1222 (11th Cir. 2000) (applying Florida law).  Likewise, in Texas, a third party can enforce an agreement "if the parties intended to secure a benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit." *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002).  The third party need not be named as long as the contracting parties "entered the agreement with the clear and express intention of directly benefitting the third party."  *See Tier Reit, Inc. v. Uvest Fin. Servs. Grp. Inc.*, Case No. 3:15-CV-03831-M, 2016 WL 4039163, at *8 (N.D. Tex. July 28, 2016) (applying Texas law to find that a third party could enforce a contract in which it was not named because it directly benefited from it).

contract was made for the benefit of a third person is whether the terms of the contract reflect an intent to benefit a third person. *Spinks v. Equity Residential Briarwood Apartments*, 90 Cal. Rptr. 3d 453,468 (Ct. App. 2009). Critically, a third party need not be expressly named or identified in a contract; a party need only demonstrate "that [it] is a member of a class of persons for whose benefit it was made." *Id.* at 469. "Whether a third party is an intended beneficiary of a contract or merely an incidental beneficiary involves construction of the intention of the parties, gathered from reading the contract as a whole in light of the circumstances under which it was entered." *Prouty v. Gores Tech. Gr.*, 18 Cal. Rptr. 3d 178, 184 (Ct. App. 2004) (citation omitted).

Intel is unquestionably a third-party beneficiary to the Settlement Agreement. The language of the Settlement Agreement and the circumstances surrounding its negotiation evince a clear intent to benefit a particular class—namely, users of Verance's digital watermarking technology. First, the terms of the Settlement Agreement are not limited to Verance or any other specific party; to the contrary, the Settlement Agreement broadly encompasses ***any*** disputes relating to U.S. Patent No. 5,889,868 or Verance's digital watermarking technology:

> 2) To the extent that the Parties still have disputes arising out of the subject matter of the [present litigation] including ***disputes as to infringement or invalidity of United States Patent Nos. 5,889,868***; 5,905,800; and 6,522,767, ***or relating to Verance Corporation's digital watermarking technology (collectively, 'Disputes'), the Parties agree to mediate such Disputes at a mutually agreed time prior to the filing of any lawsuit*** (against one or more of the Parties) relating to one or more of the Disputes.

> 3) In the event the Disputes are not fully resolved at such a mediation, the Parties will in good faith discuss party appointed binding arbitration as an alternative to the filing of any lawsuit with respect to the Disputes. In the event, however, that one or more of the Parties file(s) a subsequent lawsuit with respect to the Disputes ("Subsequently Filed Lawsuit"), the Parties agree to the following terms and conditions that shall apply to the Subsequently Filed Lawsuit:

      a) ***The Subsequently Filed Lawsuit shall be filed only in the United States District Court for the Northern District of California*** **and the Parties consent to personal jurisdiction in that court.**

*See* D.I. 42, Ex. B, Settlement Agreement §§ 2-3 (emphasis added).  The Settlement Agreement, therefore, expressly identifies a class of intended third-parties—users of Verance's digital watermarking technology—as its beneficiaries.  *Id.* Although Intel is not identified by name, Intel falls within that class, and therefore qualifies as an intended third-party beneficiary.  *Spinks*, 90 Cal. Rptr. 3d at 468-69, 471-72 (genuine issue of material fact as to whether resident was third-party beneficiary of lease agreement between employer and landlord precluded summary judgment for landlord); *Prouty*, 18 Cal. Rptr. 3d at 187 (former employees were intended beneficiaries of a purchase agreement between former employer and new parent company, and entitled to enforce the agreement).

      Although that is enough, the evidence shows that at the time the Settlement Agreement was executed, the parties clearly intended to cover Verance's customers.  Specifically, the point of the Settlement Agreement was to resolve a lawsuit filed by Blue Spike in 2004 against Verance and its customers, including Panasonic, Matsushita Electric, Toshiba, and JVC.  *See* D.I. 42, Ayers Decl. ¶ 6.  Blue Spike alleged, in that case, that the defendants' use of the Verance technology infringed certain of its patents related to watermarking technology.  *Id.*  The Settlement Agreement resolved all of Blue Spike's claims, including those against Verance's customers.  D.I. 42, Ex. B, Settlement Agreement § 1; Ayers Decl. ¶ 9.  This further confirms that the Settlement Agreement was intended to benefit users of the Verance technology.  By structuring the agreement to run with the technology at issue instead of the specific licensees involved in the prior suit, the parties explicitly intended to benefit users of the Verance technology as a class.

### 3.    Intel is a Member of the Class for Whose Benefit the Settlement Agreement was Made and May Enforce the Terms of the Agreement

As noted above, as a Verance licensee, Intel is a member of that class of persons for whose benefit the Settlement Agreement was made. *Spinks*, 90 Cal. Rptr. 3d at 469; D.I. 42, Verance Motion to Dismiss, at 9 ("The accused products and services in this case are Cinavia and ConfirMedia, which were created and developed by Verance and licensed or sold to the other defendants."), Ayers Decl. ¶ 4 ("The other Defendants in this action are Verance's licensees and/or their customers and clients.").  Moreover, the present suit is directed at that specific class.  Indeed, Blue Spike does not identify any ***Intel*** technology that allegedly infringes any of the patents-in-suit; instead, the only accused technology is ***Verance's*** "Cinavia and ConfirMedia products and services."  D.I. 1 ¶ 17.  Intel is therefore a member of the class of persons for whose benefit the Settlement Agreement was made, and is thus entitled to enforce the terms of the Settlement Agreement as a third-party beneficiary.

As such, because Blue Spike failed to fulfill the binding conditions precedent specified in the Settlement Agreement, its case against Intel should be dismissed.

## III.    IF THE CASE IS NOT DISMISSED, IT SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

As set forth in Verance's Motion to Dismiss (D.I. 42) and incorporated and adopted herein, if the Court declines to dismiss the present action, it should transfer the case to the Northern District of California in accordance with the mandatory forum-selection clause of the Settlement Agreement.  *See Rovi Guides, Inc. et al. v. Comcast Corp. et al.*, Case No. 2:16-cv-00321-RSP,  2016 WL 6217201 at *5 (E.D. Tex. Oct. 25, 2016) (transferring case to the Southern District of New York based on forum-selection clause in prior agreement).  The Settlement Agreement unambiguously mandates that any future dispute related to United States Patent No. 5,889,868 or Verance's digital watermarking technology—as the case here—be

8

brought in the Northern District of California.  There is no excuse for Verance's abrogation of this requirement.  Moreover, the Northern District of California is a more convenient forum in any case, as it is home to Intel's principal place of business.  D.I. 1 ¶ 8.  Indeed, all but one of the remaining defendants in the case have principal places of business in California, indicating that the Northern District of California is more convenient for this action than the Eastern District of Texas.  *Id.* ¶¶ 3-7.  Moreover, given that the only accused product in the case is Verance's digital watermarking technology (D.I. 1 ¶ 17), transferring the entire case to the Northern District of California would promote judicial efficiency.  *See Rovi Guides*,  2016 WL 6217201 at *5 (transferring the entire case when "[i]t would be difficult to untangle the knot" of non-Comcast defendants when their liability depended on or was connected to Comcast).

## IV.    INTEL SEEKS THAT THE CASE BE DISMISSED OR TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

Accordingly, Intel seeks that the case be dismissed or transferred to the Northern District of California, as outlined in Verance's motion, on the grounds that:

1.    Blue Spike failed to submit its "disputes as to infringement or invalidity of United States Patent No[]. 5,889,868 . . . or relating to Verance Corporation's digital watermarking technology" to mediation "prior to the filing of any lawsuit," as stipulated in the Settlement Agreement.

2.    Blue Spike failed to file its complaint in the United States District Court for the Northern District of California, as specified by the mandatory forum-selection clause in the Settlement Agreement.

For the foregoing reasons, and as further detailed in Verance's Motion to Dismiss or to Transfer Venue, this Court should dismiss the Blue Spike's claims of patent infringement by Intel in the Complaint.  In the alternative, this Court should transfer this litigation to the Northern District of California pursuant to the mandatory forum-selection clause in the Settlement Agreement.

Dated:  October 31, 2016                    Respectfully submitted,


                                    By:   */s/ Harry L. Gillam, Jr.*
                                          Harry L. Gillam, Jr. (SBN: 07921800)
                                          **GILLAM & SMITH LLP**
                                          303 South Washington Avenue
                                          Marshall, TX 75670
                                          Telephone: (903) 934-8450
                                          Facsimile:  (903) 934-9257
                                          gil@gillamsmithlaw.com

                                          Adam R. Alper
                                          (*pro hac vice* to be submitted)
                                          Akshay S. Deoras
                                          (*pro hac vice* to be submitted)
                                          **KIRKLAND & ELLIS LLP**
                                          555 California Street
                                          San Francisco, CA 94104
                                          Telephone: (415) 439-1400
                                          Facsimile: (415) 439-1500
                                          adam.alper@kirkland.com
                                          akshay.deoras@kirkland.com

                                          Darryl J. Ong
                                          (*pro hac vice* to be submitted)
                                          **KIRKLAND & ELLIS LLP**
                                          3330 Hillview Avenue
                                          Palo Alto, CA 94304
                                          Telephone: (650) 859-7000
                                          Facsimile: (650) 859-7500
                                          darryl.ong@kirkland.com

                                          **ATTORNEYS FOR DEFENDANT
                                          INTEL CORPORATION**


                                          10

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on October 31, 2016.

*/s/ Harry L. Gillam, Jr.*
Harry L. Gillam, Jr.
